**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

455 COMPANIES, LLC,

    Plaintiff,

  v.                                               Case No. 16-10034

LANDMARK AMERICAN INS. CO.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Insured Plaintiff 455 Companies, LLC alleges that Defendant Landmark American Insurance Company breached their property insurance contract by wrongly denying Plaintiff's claim resulting from water damage to the insured property. The dispute was reassigned to this court on May 17, 2017—shortly before its scheduled jury trial date of July 10, 2017. (Dkt. # 156.) The parties have engaged in extensive motion practice in anticipation of trial, and numerous motions remain pending.

Now before the court is Defendant's motion for partial summary judgment, asking the court to find as a matter of law that Plaintiff is not entitled to a variety of asserted consequential damages, that the allegations of "bad faith" fail to state a claim, and that any recovery for property damage is limited to "actual cash value." (Dkt. # 69.) The motion is fully briefed and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the court will grant the motion in part and deny it in part.[1]

---

[1] The court declines to set out a factual background here. Instead, the court refers to and incorporates the relevant section of its opinion and order denying Plaintiff's motion for partial summary judgment. (*See* Dkt. # 158, Pg. ID 11564-70.)

## I. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter . . . credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

## II. DISCUSSION

Defendant asks the court for three findings: (1) that Plaintiff is not entitled to various consequential damages; (2) that Plaintiff's "bad faith" count fails to state a claim under Michigan law; and (3) any recovery by Plaintiff is limited to "actual cash value" as

opposed to "replacement cost" because Plaintiff has not repaired or replaced the property. The court addresses each request in turn.

## A. Consequential Damages

Under Michigan law,[2] the damages recoverable in an action for breach of a commercial contract are those that "arise naturally from the breach, or which can reasonably be said to have been in contemplation of the parties at the time the contract was made." *Lawrence v. Will Darrah & Assocs., Inc.*, 445 Mich. 1, 13; 516 N.W.2d 43 (Mich. 1994) (quoting *Kewin v. Mass. Mutual Life Ins. Co.*, 409 Mich. 401 419; 295 N.W.2d 50 (Mich. 1980)) (emphasis removed). The rule derives from the well-known English case *Hadley v. Baxendale*, 9 Exch. 341; 156 Eng. Rep. 145 (1854). *See Lawrence*, 445 Mich. at 6 (discussing *Hadley*). The *Lawrence* court explains that Michigan courts take a "flexible approach when determining the foreseeability of contract damages." *Id.* at 12.

### 1. Lost sale proceeds

Defendant first contends that Plaintiff is not entitled to recover proceeds from a lost opportunity to sell the property, because the sale of the property was not contemplated by the parties at the time of the contract. (Dkt. # 69, Pg. ID 2732-34.) In support, Defendant points to a lack of evidence that the parties contemplated Plaintiff selling the property. (*Id.*)

Plaintiff's brief in opposition does not respond to this argument beyond a single assertion in the "Facts" section that "The Building has been and is currently listed for

---

[2] The court has diversity jurisdiction under 28 U.S.C. § 1332. Federal courts exercising diversity jurisdiction apply the law of the forum state. *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008). The parties agree that Michigan law governs here.

3

sale on a property website." (Dkt. # 90, Pg. ID 5590 (citing Dkt. # 90-6).) In its reply brief, Defendant contends that Plaintiff's response, such as it is, is "bereft of evidence that Plaintiff informed Defendant, *at the time the Policy was bound*, that it intended to sell the property." (Dkt. # 93, Pg. ID 6233 (emphasis added).) The court agrees. Plaintiff has failed to point to evidence creating a "genuine issue for trial" in response to Defendant's argument, and so fails to satisfy its burden under *Horton*, 369 F.3d at 909 (citation omitted). Accordingly, the court will grant Defendant's motion with respect to this issue.

## 2. Lost rental proceeds

Defendant next contends that Plaintiff is not entitled to recover for lost proceeds from renting out the building, because renting the building was not fairly contemplated by the parties at the time of the contract (Dkt. # 69, Pg. ID 2732-34), because any damage award would be speculative (*Id.* at Pg. ID 2734-38), and because Plaintiff failed to mitigate the damage to the building (*Id.* at Pg. ID 2738).

The court finds that any claim for lost rental proceeds from a hypothetical tenant too speculative to support an award of damages. "A party asserting a claim has the burden of proving its damages with reasonable certainty." *Hofmann v. Auto Club Ins., Ass'n*, 211 Mich. App. 55, 108; 535 N.W.2d 529 (Mich. Ct. App. 1995) (citation omitted). Under Michigan law:

> For a plaintiff to be entitled to damages for lost profits, the losses must be subject to a reasonable degree of certainty and cannot be based solely on mere conjecture or speculation; however, mathematical certainty is not required, and even where lost profits are difficult to calculate and are speculative to some degree, they are allowed as a loss item. The type of uncertainty which will bar recovery of damages is uncertainty as to the fact of the damage and not as to its amount . . . [since] where it is certain that

4

> damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery.

*Bonelli v. Volkswagen of America, Inc.*, 166 Mich. App. 483, 511; 421 N.W.2d 213, 226 (Mich. Ct. App. 1988) (internal citations and quotation marks omitted) (citing *Lorenz Supply Co. v. Am.* Standard, Inc., 100 Mich. App. 600, 612; 300 N.W.2d 335 (1980) *aff'd* 419 Mich. 610; 358 N.W.2d 845 (1984) and quoting *Wolverine Upholstery Co. v. Ammerman*, Mich. App. 235, 244; 135 N.W. 2d 572 (1965) (in turn quoting 15 Am. Jur., Damages, § 23, pp. 414-16)).

The "facts" sections of Plaintiff's brief points out that the previous tenant occupied the building for 19 years and the building had been vacant for approximately 9 months at the time Plaintiff purchased it in June of 2014 (Dkt. # 90-10, Pg. ID 5855); the building displayed an "available" sign, indicating it was available for lease (Dkt. # 90, Pg. ID 5590), and points to the deposition testimony and affidavit of Plaintiff's corporate designee, Philippe Katz. stating that he doubts any potential tenants would be interested in the building in its current (damaged) state (Dkt. # 90, Pg. ID 5599). In his deposition testimony, Katz also stated that he "remember[ed] one offer that was made to lease two floors, and there may have been another offer to lease one floor[,]" but any such offers would have been rejected because Plaintiff was looking for a single tenant for the entire building. (Dkt. # 70-2, Pg. ID 2779-80.) Plaintiff points to nothing further in the record to show any negotiations with prospective tenants, efforts made to promote or market the building to prospective tenants, or if any interested companies lost interest as a result of the flooding.

To establish the "certainty" of the rent proceeds Plaintiff would have collected but for the damage to the building, Plaintiff, presenting no appraiser expert of its own,

5

principally relies on an estimate prepared by Defendant's expert appraiser, Brian Beaty (See Dkt. # 90, Pg. ID 5598.) Beaty estimated that renting the entire building would net $645,458 in annual operating income in its pre-loss condition. (Dkt. # 90-6, Pg. ID 5746.) But Beaty's estimate assumed that Plaintiff successfully secured a renter—itself dependent on efforts to market the property to potential tenants.

Plaintiff has pointed to no evidence that it was certain—or even likely—to find the single, full-building tenant for whom it was searching. Nor has Plaintiff provided evidence of any efforts made to secure such a tenant beyond posting an "available" sign. Plaintiff owned a vacant building for some eight months at the time of the loss, and the record provides no hint of interest in leasing the entire building—notwithstanding Plaintiff's statements about the recent success of Quicken Loans owner Dan Gilbert. Nothing in the record suggests that Plaintiff is Dan Gilbert. The court sees no reason to believe Plaintiff could reasonably expect a similar level of success after some eight months without serious interest and absent any apparent efforts to market the building. For these reasons, the court finds no genuine dispute of fact that Plaintiff did not lose a potential tenant as a result of the loss or Defendant's denial of coverage and, as a result, that Plaintiff's request for lost rental proceeds is based on speculation. *See Mattress Closeout Ctr. IV, LLC v. Panera, LLC*, 2016 U.S. Dist. LEXIS 91881, *25-26 (E.D. Mich. July 15, 2016) (Rosen, J.) (finding claim for lost profits too speculative when plaintiff could not establish basis for estimated lost customers). The court will grant this portion of Defendant's motion accordingly.

6

### 3. Signal litigation

Plaintiff also seeks to recover the cost, including attorney fees, of defending an action brought against it by its remediation contractor, Signal Restoration Services ("Signal"), for payment of more than $1.1 million for work done in a three-month period following the loss. Defendant contends that Plaintiff "has no proof that such damage was within the contemplation of the parties at time of contract." (Dkt. # 69, Pg. ID 2734.) Plaintiff responds that the Signal litigation was a natural consequence of Defendant's bad faith in "continuing to direct and supervise Signal's mitigation work for months after Landmark had already decided" to deny Plaintiff's claim[,]" citing *Fagerberg v. LeBlanc*, 164 Mich. App. 349, 356-57; 416 N.W.2d 438 (Ct. App. Mich. 1987) (finding litigation with third party to correct title deficiency to be "legal and natural consequence" of defendant seller lying to plaintiff purchaser about legal boundaries of plot of land and allowing recovery on tortuous fraud claim). (Dkt. # 90, Pg. ID 5606.) The court disagrees.

It is undisputed that Plaintiff retained Signal before notifying Defendant of the loss. The contract with Signal, negotiated by Plaintiff, explicitly provides,

> In the event that there are Insufficient Insurance Proceeds for all or part of the work performed, the owner or responsible party agrees to pay Signal Restoration Services the cost of the services and materials, including overhead and profit in an amount not to exceed 20%. The property owner shall be responsible for payment of all sums due that are not covered by the Insurance Proceeds.

(Dkt. # 22, Pg. ID 409.)

The court has no difficulty agreeing with the Michigan Court of Appeals in *Fagerberg* that a natural consequence of lying to a land purchaser about the dimensions of the land is litigation to determine the legitimate boundaries. But that is not

7

the case here. Here, Plaintiff made contractual arrangements to which Defendant was not a party and in which Plaintiff committed to covering all costs not paid by Defendant, apparently failed to keep a handle on the costs from that arrangement, and then was unable to pay those costs once Defendant denied Plaintiff's claim.

The court finds these circumstances too removed to qualify as the "natural result" of Defendant's conduct under the circumstances here, particularly in light of Plaintiff's failure to cite a single case in the context of insurance where, presumably, circumstances such as these are common. Moreover, the court has been unable to locate a case on its own. Plaintiff points to nothing to suggest damages such as these were contemplated by the parties at the time of the contract. Accordingly, the court will grant Defendant's motion with respect to the claim for damages from the Signal litigation as well.

### B. Bad Faith

At the outset, the court notes that Michigan courts have refused to recognize bad-faith breach of an insurance contract as a separate tort independent of the contract claim. *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 729 N.W.2d 277, 286 (2006) ("An alleged bad-faith breach of an insurance contract does not state an independent tort claim."); s*ee also Cromer v. Safeco Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 36630, *7-11 (E.D. Mich. April 14, 2010) (Rosen, J.) (collecting cases). Neither does Michigan law allow punitive or exemplary damages for breach of an insurance contract absent a tort claim that is "independent of the breach." *Casey*, 273 Mich. App. at 402 (quoting *Kewin*, 409 Mich. at 419, 421. Thus, to the extent Plaintiff seeks to assert a freestanding

claim for bad faith and to recover punitive or exemplary damages, Defendant is entitled to summary judgment.

Plaintiff contends that it is entitled to penalty interest pursuant to Mich. Comp. Laws § 500.2006, which requires that an insurance company be penalized at a rate of 12 percent per annum for the untimely payment of benefits. Insurers are subject to this penalty if they fail to timely pay the insured regardless of whether a claim is "reasonably in dispute." *Griswold Properties, LLC v. Lexington Ins. Co*, 276 Mich. App. 551, 565-66; 741 N.W.2d 549 (Mich. Ct. App. 2007) (characterizing as *dicta* earlier Michigan Supreme Court language to the contrary); *see also Nickola v. MIC General Ins. Co.*, 894 N.W.2d 552, 559-61 (Mich. 2017) (discussing *Griswold* with approval). Given that Defendant would be subject to the penalty interest regardless of the reasonableness of its refusal to pay under *Griswold*, the court sees no reason why "bad faith" is relevant to the application of penalty interest statute. Plaintiff's cited cases on this point all predate *Griswold*.

Plaintiff correctly contends that "there is a covenant of good faith and fair dealing in every insurance contract." (Dkt. # 90, Pg. ID 5605.) Michigan courts "have held only that an insurer has the duty to act in good faith in negotiating a settlement within the policy limits and the duty to act in good faith in investigating and paying claims." *Reliance Ins. Co. v. Triss Corp.*, 2008 WL 1925054, *3 (E.D. Mich. May 1, 2008) (Edmunds, J.) (collecting cases). Plaintiff asserts that Defendant breached this covenant "by continuing to direct and supervise Signal's mitigation work for months after Landmark had already decided" to deny Plaintiff's claim. (Dkt. # 90, Pg. ID 5606.) As the

court has already found damages relating to the cost of the Signal litigation unavailable, it need not address Plaintiff's arguments here.

Finally, Plaintiff also argues that Defendant's alleged bad faith is relevant to whether it may recover the full cost of repairing or replacing the building. The court addresses this issue in the following section.

### C. Recovery limited to actual cash value

Defendant contends that Plaintiff's potential recovery is limited to the "Actual Cash Value" of the property, as opposed to the replacement cost, because Plaintiff has not yet repaired or replaced the damaged property. (Dkt. # 69, Pg. ID 2743-44.) The relevant policy provision states:

> 3. Replacement Cost
>
> . . .
>
> d. We will not pay on a replacement cost basis for any loss or damage:
>> (1) Until the lost or damaged property is actually repaired or replaced; and
>> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(Dkt. # 1-1, Pg. ID 65.)

In response, Plaintiff argues that because Defendant's denial was in bad faith, the condition requiring the building be replaced is excused, citing *McCahill v. Commercial Union Ins. Co.*, 446 N.W.2d 579 (Mich. Ct. App. 1989) and *Pollock v. Fire Ins. Exchange*, 423 N.W.2d 234 (Mich. Ct. App. 1988). (Dkt. # 90, Pg. ID 5609-10.) Further, Plaintiff contends, even if Defendant's denial is found to have been a good-faith mistake, Defendant would be entitled to the actual cash value immediately, and to the full replacement cost once the building was repaired or replaced, citing *Smith v.*

10

*Michigan Basic Property Ins. Ass'n*, 490 N.W.2d 864 (Mich. 1992). (*Id.*) Defendant does not address this issue in its reply brief.

The statutory provision relied upon by Defendant expressly applies to "fire insurance polic[ies]." Mich . Comp. Laws § 500.2826.[3] Every case cited by the parties involves claims for property damaged by fire. *See McCahill*, 446 N.W.2d 579, 580 (fire damage to home); *Pollock*, 423 N.W.2d at 234 (same); *Cortez v. Fire Ins. Exchange*, 196 Mich. App. 666; 493 N.W.2d 505 (Mich. Ct. App. 1992) (same); *Smith*, 490 N.W.2d at 864 (same). Neither party addresses whether the applicable law differs outside the context of fire insurance. In the absence of briefing to the contrary, the court concludes that the relevant law is the same.

The court agrees with Plaintiff, and notes that this rule follows from well-settled principles of contract law regarding conditions-precedent. *See McCahill*, 446 N.W.2d at 585 ("[I]f an insurer hinders an insured's performance of a condition precedent, that performance is excused on equitable grounds.") (citing *Pollock*, 423 N.W.2d at 234.)[4] Defendant attempts to distinguish *Smith*'s holding that an insured may recover replacement cost after litigation by arguing that Plaintiff is a corporation that paid the $3.5 million purchase price for the building in cash, not a private party whose damaged

---

[3] "An insurer may issue a fire insurance policy, insuring property, by which the insurer agrees to reimburse and indemnify the insured for the difference between the actual value of the insured property . . . and the amount actually expended to repair, rebuild, or replace [the property] . . . . A fire policy issued pursuant to this section may provide that there shall be no liability by the insurer to pay the amount specified in the policy unless the property damaged is actually repaired, rebuilt, or replaced at the same or another site." Mich. Comp. Laws § 500.2826.

[4] The court notes that whether the condition is excused—and the full replacement cost due—appears to be an equitable determination made by the court. *See Pollock*, 423 N.W.2d at 237 ("[T]he trial court properly determined that Plaintiff was excused from performing her obligation under the policy to repair or replace the building due to defendant's dilatory tactics.")

home was mortgaged. (Dkt. # 69, Pg. ID 2743 n.2.) In light of the Signal litigation spawned by Plaintiff's failure to pay its remediation contractor, the court finds a dispute of fact as to whether Defendant's "unwillingness to recognize [Plaintiff's] claims may, as a practical matter, have disabled [Plaintiff] from undertaking the repair, rebuilding, or replacement of [the building]." *Smith*, 490 N.W.2d at 868.

As a result, in the event that the finder of fact determines the loss to have been covered under the policy, Defendant's alleged bad faith would be relevant to whether Plaintiff should receive the replacement cost immediately or only after repairing or replacing the building. *Id.* Either way, Defendant's motion must be denied with respect to its contention that Plaintiff is limited to recovering only the actual cash value.

### III. CONCLUSION

IT IS ORDERED that Defendant's motion for partial summary judgment (Dkt. # 69) GRANTED IN PART and DENIED IN PART. The motion is DENIED with respect to the contention that Plaintiff's recovery, if any, is limited to actual cash value. The motion is GRANTED in all other respects.

                                                  s/Robert H. Cleland
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

Dated: August 9, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 9, 2017, by electronic and/or ordinary mail.

                                                  s/Julie Owens
                                                  Acting in the absence of Lisa Wagner
                                                  Case Manager and Deputy Clerk
                                                  (810) 292-6522