## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| 455 COMPANIES LLC, | HON. ROBERT H. CLELAND |
| | |
| Plaintiff, | MAGISTRATE JUDGE STEPHANIE DAWKINS DAVIS |
| v. | |
| | Case No.: 16-CV-10034 |
| LANDMARK AMERICAN INSURANCE COMPANY, | **JOINT FINAL PRETRIAL ORDER** |
| Defendant. | |

In accordance with the Court's Amended Scheduling Order dated November 27, 2017 (Dkt. No. 168), and Local Rule 16.2, Plaintiff 455 Companies LLC ("455") and Defendant Landmark American Insurance Company ("Landmark," and, together with 455, the "Parties") submit the following Proposed Joint Final Pretrial Order.

## 1.   JURISDICTION

This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) as the Parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Subject matter jurisdiction is not contested by any party.

## 2.    PLAINTIFF'S CLAIMS

**455's First Cause of Action is for breach of contract.** Under Michigan law, to prevail on a claim for breach of contract, 455 must first establish the elements of a valid contract. Those elements are (1) parties competent to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *See, e.g.*, *Hess v. Cannon Township*, 265 Mich. App. 582, 592, 696 N.W.2d 742, 748 (2005). Once a valid contract has been established, 455 must prove (1) the terms of the contract; (2) breach of the terms by Landmark; and (3) injury to 455 resulting from the breach. *See, e.g.*, *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 817, 822 (E.D. Mich. 2014).

455 anticipates that all but two of these elements will be easily amenable to proof and uncontested by Landmark. The contract at issue in this case is a property insurance policy common in the industry sold by a sophisticated party—Landmark, an insurance company—to 455, an owner of commercial real estate (the "Policy"). Thus, the elements of a valid contract should be stipulated or, if not, subject to easy proof at trial.

Similarly, the terms of the contract are not in dispute between the Parties. The Policy is an all-risk insurance policy which, by its broad terms, necessarily covers water damage in the first instance. Further, the Policy specifically provides coverage for "water damage," which the Policy defines as "accidental discharge or

leakage of water or steam as the direct result of the breaking apart or cracking of a

plumbing, heating, air conditioning or other system or appliance (other than a

sump system including its related equipment and parts), that is located on the

described premises and contains water or steam."  455 seeks coverage for such

"water damage" sustained in January 2015 to the office building located at 455

West Fort Street, Detroit, Michigan (the "Insured Premises"), with water

discharging from a broken pipe in the fifth-floor women's restroom of the Insured

Premises (the "Loss").  Thus, that the Policy provides coverage for the exact type

of damage suffered by 455 is not reasonably in dispute.[1]

The primary area of dispute on the breach of contract claim will be whether

Landmark breached the terms of the Policy.  Here, Landmark has denied coverage

for the Loss on the sole ground that the Loss is barred by the "Protective

Safeguards" exclusion in the Policy that requires heat to be maintained at 55

degrees Fahrenheit.  Under Michigan law, it is Landmark's burden to prove the

applicability of that policy exclusion or limitation, and the exclusion will be strictly

construed in favor of the insured.  *See, e.g.*, *Hunt v. Drielick*, 496 Mich. 366, 373,

---

[1] Landmark's new position that that the Policy somehow "excludes water loss and
damage, but gives back coverage if and only if the terms and conditions of the
Protective Safeguards Endorsement and Protective Safeguards - Form Change have
been fully complied with" rests on a fundamental misreading of the policy.  As
stated, the Policy, in the first instance, covers water damage.  Coverage for water
damage is then excluded if, at the time of the loss, the heat is not maintained at 55
degrees.

852 N.W.2d 562, 565–66 (2014); *Morrill v. Gallagher*, 370 Mich. 578, 587, 122

N.W.2d 687, 691 (1963); *Shelton v. Auto-Owners Ins. Co.*, 318 Mich. App. 648,

657, 899 N.W.2d 744, 749 (2017); *Monteleone v. Auto Club Grp.*, 113 F. Supp. 3d

950, 959 (E.D. Mich. 2015); *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 916

F. Supp. 2d 813, 822 (W.D. Mich. 2013); *Roddis Lumber & Veneer Co. v. Am.*

*Alliance Ins. Co. of N.Y.*, 330 Mich. 81, 88, 47 N.W.2d 23, 26 (1951).

It is undisputed that pipe bursts are covered under the Policy unless

Landmark can show that, at the time of the Loss, 455 did not maintain the heat at

55 degrees.[2]  As Landmark recognized in a formal pleading in this action,

---

[2] Irrespective of whether the endorsement is identified in the policy as a condition, exclusion, or both, in practice, the Michigan Supreme Court has found repeatedly that the insurer bears the burden to prove breach of a policy provision that excludes coverage for a particular category of loss based on an act or omission of the insured which impacts the insurer's risk under the policy.  *See Molnar v. Cent. Mut. Auto Ins. Co. of Detroit*, 242 Mich. 41, 42, 217 N.W. 770, 770 (1928) (where policy conditioned coverage on the insured using a lock in his car and maintaining the lock, breach of this condition needed to be "alleged *and proved* by defendant" (emphasis added)); *Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402, 405, 646 N.W.2d 170, 175 (2002) (finding that policy commitment that conditioned effectiveness of the policy on the insured informing the insurer of known liens was not a condition precedent, but a condition *subsequent*, because the condition "speaks to voiding part of a subsequently issued policy, not to avoiding the obligation to *issue* a policy," and because it was "not a condition precedent to the effectiveness of the *entire* policy" (emphasis added)); *Curth v. N.Y. Life Ins. Co.*, 274 Mich. 513, 521, 265 N.W. 749, 751 (1936) (finding that policy condition that excluded coverage in the event of suicide by the insured was a condition subsequent and the burden rested on the insurer); *see also Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Future Davenport*, 519 S.W.3d 702, 705 (Ark. 2017) (where policy stated, in its "Conditions" section, that the insurer would only cover loss if

"Landmark's burden at trial is to prove the exclusion, i.e., that the building's heat was not maintained at 55 degrees."[3]  Landmark cannot meet this burden. Landmark and its agents, including its first two experts, had virtually unfettered access to the Insured Premises in the days after the Loss was discovered, and the opportunity to measure temperature and water pressure anywhere they chose within the Insured Premises, but chose not to do so.  Landmark has admitted numerous times that heat was, in fact, maintained in the building.  Further, although Landmark has retained three engineers on this issue, their opinions are wildly inconsistent, both with the factual record, and each other.

First, Landmark's initial retained expert reported that the heat only shut off after the Loss as a result of the repair of the broken water pipe.  Landmark summarily discharged that expert and replaced him with a second expert who opined that the fifth floor pipe broke not because the building itself was inadequately heated, but rather because a rooftop line exposed to the outdoors may have frozen, which led to a build-up of pressure in the interior fifth floor pipe itself.  In fact, in her official report, Landmark's second expert conceded that "steam utility records confirmed heat was provided to the fifth and lower floors," and there was "heat inside the building's five floors" prior to the heat being turned

---

the insured fails to occupy the premises for thirty days, the court found that this provision was an exclusion and that the burden of proof was on the insurer).

[3] Dkt. No. 82, at 18.

off after the Loss was discovered.

Because its first two experts' theories undermined its defense, Landmark retained a third expert who claimed for the first time that the fifth-floor interior pipe froze due to a gust of wind that may have traveled horizontally into a rooftop mechanical room, then dropped vertically through an air vent into the fifth floor, and then horizontally again through small holes in the wall to reach the fifth-floor pipe. This third Landmark expert's speculative theory was directly refuted by Landmark's second expert who opined that the alleged freezing of the fifth-floor pipe—deep in the interior of the building and away from the windows—was "not possible."

Further, there is undisputed evidence that the heat was adequately maintained at the time of the Loss. Invoices prove that 455 purchased steam heat for the Insured Premises in an equivalent quantity at the time of the Loss as it had in prior winter months. Temperature records show that the prior winter had been far colder, but no water loss occurred. Photographs of the temperature and pressure gauges taken by the first responder to the Loss confirm that the building was properly heated with 160-degree water, which circulated through the building to reach all five floors at the time of the Loss to ensure the building temperature remained between 55 and 60 degrees. 455's expert has opined consistently with this evidence.

449774.1

Finally, as Landmark has conceded, it must also demonstrate that 455's alleged failure to maintain heat at 55 actually resulted in the Loss.  As this Court ruled: "If, as Defendant contends, pipes froze and burst <u>because</u> Plaintiff failed to keep the building above 55 degrees the exclusion applies and the condition is unsatisfied . . . ."[4]  *Lakeland Asphalt Corp. v. Westfield Ins. Co.*, No. 1:10-CV-887, 2012 WL 360293, at *3 (W.D. Mich. Feb. 2, 2012) ("In the absence of specific contractual language to the contrary, Michigan courts have long applied the 'proximate cause' standard to determine if coverage was precluded by the occurrence of a particular event.").  Because Landmark cannot demonstrate that the heat was maintained below 55 at the time of the Loss, it cannot meet this burden.

A secondary issue will have to do with the final element of the claim, proving 455's injury as a result of Landmark's alleged breach.  The dispute is not over *whether* 455 was injured; Landmark has not paid any amounts to cover 455's damage, and both Parties agree that there is, at least, several million dollars in damage to the Insured Premises as a result of the Loss.  The dispute is over the monetary value of the damage 455 sustained.  The Parties have competing experts, each with his own estimate of the replacement cost value of the damage the

---

[4] Dkt. No. 158, at 11 (emphasis added).

7

building sustained.[5]  It is 455's position that the issues raised by Landmark's expert to lower his overall estimate are baseless and not supported by fact, law, or common sense.  455 has suffered injury in the amount of its expert's estimate of replacement cost damages ($3,397,723.95), as well as $1,286,592.31 in mitigation costs as of November 30, 2017, based on the last invoice from mitigation contractor Signal Restoration Services, an amount which continues to increase with interest.  Thus, 455 seeks at least $4,684,316.26 in combined replacement and mitigation costs and should be awarded that amount, plus any additional interest accrued on the mitigation costs by the time of judgment, in compensatory damages (the "Claim").[6]

**455's Second Cause of Action is for a declaration that the Loss is covered up to the limits of the Policy.**  Declaratory relief is available when there is an actual controversy, which exists where a declaratory judgment is necessary to

---

[5] Landmark moved for a partial summary judgment ruling that 455 is not entitled to replacement cost because 455 had not yet repaired or replaced the Insured Premises.  The Court denied that motion, holding that (1) 455 is entitled to full replacement cost value when it replaces the Insured Premises at the current location or at different location, and (2) if 455 demonstrates that Landmark acted in bad faith, then 455 is entitled to immediate replacement cost value of the Loss. Dkt. No. 159, at 10–12.

[6] In its Defendant's Claims section, Landmark states that "Plaintiff's present claim includes . . . mold damage in excess of the Policy's sublimited coverage of $15,000 . . . and excluded asbestos . . . ."  This is not accurate; 455's damages submitted to date specifically exclude amounts for mold and asbestos remediation.

8

guide a litigant's future conduct in order to preserve his legal rights, within the

jurisdiction of the court.  *See* 28 U.S.C. § 2201–02; *Home-Owners Ins. Co. v.*

*Allied Prop. & Cas. Ins. Co.*, 152 F. Supp. 3d 956, 962 (W.D. Mich. 2016) (citing

*U.S. Aviex Co. v. Travelers Ins. Co.*, 125 Mich. App. 579, 585, 336 N.W.2d 838,

841 (1983)).  Again, the elements of this cause of action are undisputedly

present—there is a controversy between 455 and Landmark over 455's Claim, and

this Court has jurisdiction (*see supra* Section 1).

There is a dispute over the nature of the declaratory judgment to be awarded.

455 advocates for a declaratory judgment that its Claim is within the Policy's

coverage grant and that Landmark cannot meet its burden to show that any

exclusion bars coverage for the Claim.

**Plaintiff's Third Cause of Action is for Landmark's alleged violation of**

**Michigan Compiled Laws § 500.2006.**  The elements of a claim for violation of

the statute are (1) that benefits are not paid on a timely basis under an insurance

policy, and (2) that the insurer has received satisfactory proof of loss from the

policyholder.  If those two conditions are met, the policyholder is entitled to

payment of 12% penalty interest on the amount of the claim.  Mich. Comp. Laws

§ 500.2006; *Nickola v. MIC Gen. Ins. Co.*, 500 Mich. 115, 894 N.W.2d 552, 555–

61 (2017); *Griswold Props., L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551,

564–66, 741 N.W.2d 549, 556–57 (2007) (recognizing that a first-party

policyholder does not have to show that its claim was not reasonably in dispute or bad faith to recover under Mich. Comp. Laws § 500.2006).

Although Landmark contends that 455 is not entitled to interest because it did not provide a formal "proof of loss," the Policy provides that 455 must send a signed, sworn proof of loss to Landmark "within 60 days after [Landmark's] request," and states "We [Landmark] will supply you with the necessary forms." At no time prior to May 13, 2015, did Landmark request a proof of loss from 455 or provide any forms for a proof of loss. Under Michigan law, where the insurer never requests a proof of loss, it cannot later use the fact that it never made such a request as a defense to penalty interest; rather, such interest is deemed to commence 60 days after the policyholder provided notice of the claim. *See Mathis v. Encompass Ins. Co.*, No. 06-CV-13837, 2008 WL 919934, at *4 (E.D. Mich. Apr. 3, 2009) (holding that where a policyholder had provided notice of claim, the insurer had received notice and established a claim number but never thereafter specified in writing what constituted satisfactory proof of loss, the calculation of penalty interest began sixty days after the policyholder submitted notice of the loss).

In this case, 455 provided initial notice of the Loss to Landmark on January 14, 2015. Landmark assigned personnel to handle the Claim and worked with a remediation contractor, directing it over the course of four months to address and

10

449774.1

remediate the damage.  Yet on May 13, 2015, after that work was complete and
after that remediation contractor had charged more than $1.2 million for its work,
Landmark abruptly denied coverage for the Loss and in so doing breached the
Policy.  What is worse, *Landmark* instructed its representatives to quit working
with 455's representatives who were attempting to develop a proof of loss.
Specifically, on May 28, 2015, when 455's adjuster reached out to Landmark's
estimator, he was told curtly that Landmark's estimator "has final invoiced this
claim, and closed our file.  I don't mean to sound petty, but I can't put work into
something I can't invoice."  As this Court stated in its August 9, 2017 Opinion and
Order, "[I]f an insurer hinders an insured's performance of a condition precedent,
that performance is excused on equitable grounds."[7]

Here, by failing to request a proof of loss, by failing to provide the necessary
form, and by refusing to engage 455's adjuster in developing a proof of loss,
Landmark prevented 455 from complying with the Policy provision.  Accordingly,
455's performance is excused and Landmark must pay full penalty interest on the
total amount owed under the Policy, commencing from 60 days after the date of
notice, January 14, 2015.

### 3.   **DEFENDANT'S CLAIMS**

**Plaintiff's burden to prove compliance with the condition of coverage**

---

[7] Dkt. No. 159, at 11–12.

**imposed by the Policy's Protective Safeguards Endorsements**:  Plaintiff has the initial burden to prove that a fortuitous loss occurred to insured property, that the insured loss occurred within the policy period and, that the value of the damages claimed resulted from insured loss to insured property.[8]  Plaintiff also has the burden to prove it complied with the Policy's condition to maintain the building's heat at 55 degrees as required by the Protective Safeguard Endorsements.

For coverage to exist, Plaintiff must comply with all terms and conditions of the Landmark Policy (No. LHD3888687).  Where Plaintiff fails to satisfy a condition precedent in the contract of insurance, Plaintiff is not entitled to the benefits of the contract.  *See*, *Nykoriak v. Diamond State Insurance Company* 2015 WL 12684462; *Bruinsma v. State Farm Fire & Casualty Co.*, 410 F. Supp. 2d 628, 633 (W.D. Mich. 2006); *Decker Mftg. Corp. v. Travelers Indem. Co.*, No. 1:13-CV-820, 2015 U.S. Dist. LEXIS 12169, at *28 (W.D. Mich. Feb. 3, 2015); *Valley*

---

[8] "All risk policies are not 'all loss' policies; all risk policies…contain express written exclusions and implied exceptions which have been developed by the courts over the years. …" *See, e.g., Ariston Airline & Catering Supply Co., Inc. v. Forbes*, 511 A. 2d 1278, 1282 (N.J. Super Ct. Law Div. 1986) (internal citations omitted).  Here, the Policy in effect at the time of the claimed loss was issued by Landmark to 455 Companies LLC for the term of July 8, 2014 to July 8, 2015. (Dkt. #158, Pg. ID 11564).  The Landmark Policy afforded all-risk coverage to the described Building located at 455 West Fort Street, Detroit, Michigan with a limit of insurance set at $15,000,000.   Id.  Importantly, that the Policy provides coverage on an all-risk basis does not mean that it provides coverage for all losses. The all-risk coverage afforded under the Landmark Policy was subject to all terms, conditions limitations and exclusions contained within such Policy.

12

*Nat'l Bank of Arizona v Kline*, 108 Mich. App. 133, 137-38; 310 N.W.2d 301 (1981).

The terms of the contract are not in dispute between the Parties. The Policy specifically contains Water exclusions which exclude loss or damage caused by or resulting from Water. (Causes of Loss – Special Form (CP 10 30 06 07)). The Causes of Loss – Special Form is modified by the Protective Safeguards Endorsement (IL 04 15 04 98) and the Protective Safeguards – Form Change endorsement (RSG 44025 0304) which, collectively, specifically state that Landmark will not pay for water loss or damage, if prior to the loss, 455 knew of any suspension or impairment in any protective safeguard listed in the endorsement's Schedule and failed to notify Landmark of that fact – or – failed to maintain any protection safeguard listed in the endorsement's schedule over which 455 had control or in complete working order. The endorsements' Schedule expressly states: "Heat maintained at 55 degrees".

As such, and read as a whole, the Policy excludes Water loss and damage, but gives back coverage if and only if the terms and conditions of the Protective Safeguards Endorsement and Protective Safeguards – Form Change have been fully complied with.

The Protective Safeguard Endorsements attached to, and made part of, the

13

Landmark Policy added a condition and an exclusion to the Policy.[9]  By the express terms of the Policy, Plaintiff warranted, and coverage was conditioned upon, the building's heat being maintained at 55 degrees.  Losses caused by water damage are excluded to the extent that Plaintiff failed to maintain the heat at 55 degrees prior to the loss.  The exclusion applies here where certain pipes froze and burst causing the claimed damage.

Plaintiff cannot demonstrate – through competent evidence – that it satisfied the condition precedent for coverage due to the deficiency in proof in, and inability to advance any evidence that the building's heat was maintained at or greater than 55 degrees in the days prior to the discovery of the loss.

To the extent Plaintiff meets its preliminary burden, only then does the burden shifts to Landmark to prove any exclusions applicable for those actual items of loss or damage that Plaintiff has initially proven.  If Plaintiff contends an exception to an exclusion applies, Plaintiff has the burden of proof to prove that such exception applies under the Landmark Policy.[10]

**The Protective Safeguard Endorsements' exclusion serves to bar**

---

[9] July 28, 2017 Opinion and Order Denying Plaintiff's Motion for Partial Summary Judgment, R.Doc. 158 at 11.

[10] *Travelers Prop. Cas. of Am. v. Eyde Co.*, No. 5:05-CV-168, 2007 U.S. Dist. LEXIS 1674, at *9 (W.D. Mich. Jan. 9, 2007), citing *Heniser v. Frankenmuth Mut. Ins. Co*., 449 Mich. 155, 161 n.6, 534 N.W.2d 502 (1995) (quoting *Arco Ind. Corp. v. American Motorists Ins. Co*., 448 Mich. 395, 424-25, 531 N.W.2d 168 (1995)).

14

449774.1

**liability for Plaintiff's water loss and damage**.  Even if Plaintiff is excused of its preliminary burden to demonstrate compliance with the Policy's condition to maintain the building's heat at 55 degrees, here, the evidence is clear that the building's heat was not maintained at 55 degrees and the exclusion applies and bars coverage for Plaintiff's water loss and damage.  In failing to maintain the building's heat at 55 degrees, Plaintiff failed to comply with the Policy's Protective Safeguard Endorsements.  As such, Plaintiff's claims for water loss and damage to its vacant building are excluded by the express terms of the Policy's Protective Safeguard Endorsements.

Landmark's investigation revealed that not one, but two (2) pipes and a valve froze and cracked – a determination also made by contractors called to the building to perform requisite repairs.  Landmark's investigation also revealed that substantial ice had formed on the inside of the building – directly above the heat registers – a condition which negates any claim that the building's heat was maintained at 55 degrees.  Moreover, Plaintiff's own records contain a repair invoice for "no heat" issued from D.J. McConnell Co. HVAC Services which bear the handwritten date of January 13, 2015, the alleged date of discovery.  McConnell's invoice indicated that there was "no heat" because the system had a "bad trap" which required replacement.  A component of the "bad trap" was removed from the building and never disclosed to Landmark during the course of

449774.1

its investigation.  Given the totality of the affirmative evidence that the building's heat was not maintained – a fact confirmed by Landmark's experts – Plaintiff will not be able to prove that it complied with the condition contained within the Protective Safeguards Endorsements.  Further, the evidence demonstrates the applicability of the Protective Safeguard Endorsements' exclusion which serves to bar coverage for Plaintiff's water loss and damage.

**Certain of Plaintiff's claimed damages include undamaged items, excluded loss or damage otherwise sublimited by the terms of the Policy.** Plaintiff also bears the burden to prove the value of covered loss and damage.  The evidence is clear that the Plaintiff's present claim includes undamaged items, mold damage in excess of the Policy's sublimited coverage of $15,000 [CP 10 30 06 07], and excluded asbestos [RSG 96013 1003].  Plaintiff seeks the value of repair and replacement for items which have not been repaired or replaced since the date the loss was discovered.

Additionally, the Policy's Building and Personal Property Coverage Form provides for the optional coverage of replacement value which the Court has addressed in its summary judgment Order.[11]

Plaintiff's expert's replacement cost estimate includes the cost of repairing or replacing items that were not damaged by the loss and improperly inflates the

---

[11] Dkt. No. 159, at 10-12.

449774.1

cost of repairing or replacing the items that did sustain damage.  The accurate replacement cost value of the damage to the building totals $2,415,393.91, as set forth in Landmark's expert's estimate.  Plaintiff also claims $1,286,592.31 in "mitigation costs" that include excluded items related to asbestos and mold.  The mitigation costs claimed also are improperly inflated due to delays that adversely effected the mitigation timeline and inaccurate pricing for labor and equipment.  When all of those items are removed, the total cost of mitigation drops to $573,070.17.  Overall, the accurate measure of the loss totals $2,988,464.08.

Put simply, Plaintiff did not comply with the condition of coverage found in the Protective Safeguards Endorsements; Plaintiff cannot meet its burden to demonstrate compliance with the Policy's condition of coverage found in the Protective Safeguard Endorsements; the exclusion contained in the Policy's Protective Safeguard Endorsements serves to bar coverage for Plaintiff's water loss and damage due to Plaintiff's failure to maintain the building's heat at 55 degrees; and, certain damages alleged by Plaintiff are either not covered, excluded from coverage, or are sublimited to $15,000.00 under the clear and unambiguous language of the Landmark Policy.

**No Interest Is Owed Where Plaintiff Failed To Submit A Satisfactory Proof Of Loss And Where Plaintiff Otherwise Failed To Comply With Michigan Compiled Laws § 500.2006.**   Plaintiff avers that the policyholder is

449774.1

entitled to payment of 12% penalty interest on the amount of the claim. Mich.
Comp. Laws § 500.2006. At no time during the pendency of Landmark's
investigation, or after the Company issued its denial letter, or at any time prior to
Plaintiff's commencement of this action, did Plaintiff submit a claim demanding
payment or a proof of loss for Landmark's consideration, much less a satisfactory
proof of loss as is required by Mich. Comp. Laws § 500.2006 for the entitlement of
interest. Plaintiff was aware of the information that was necessary for a
satisfactory proof of loss but did not produce that information to Landmark prior to
filing this lawsuit. Plaintiff is not relieved of the requirement to submit a sworn
proof of loss to the extent it seeks to recovery interest as set forth in the statute.

### 4.   **JOINT STIPULATION OF FACTS**

1.     455 is a limited liability company that was formed for the sole
purpose of purchasing the Insured Premises and adjacent parking lot.

2.     455 purchased the Insured Premises in or around June 2014 and is,
and was at all times relevant to this action, the owner of the Insured Premises.

3.     The Insured Premises is a commercial 114,000 square foot building
with a basement and five floors, above which sits two rooftop mechanical rooms.

4.     As of June 16, 2014, the date of 455's application for commercial
insurance, the Insured Premises had been vacant for nine months since the prior
tenant, Detroit Works, had vacated.

18

5.     455 is the named insured under Landmark Policy No. LHD388678
(the "Policy").

6.     The Policy in effect at the time of the claimed loss has a policy period
from July 8, 2014 to July 8, 2015.

7.     The Declarations section of the Policy identifies the Insured Premises
as 455 West Fort Street, Detroit, Michigan 48226 and provides a Limit of
Insurance of $15,000,000 per occurrence at that location subject to a $25,000
deductible.

8.     The Declarations section of the Policy lists the Covered Causes of
Loss as "Special."

9.     Part A of the "Protective Safeguards" endorsement provides that
"Heat maintained at 55 degrees" is added to the "Commercial Property
Conditions" form.

10.     The "Protective Safeguards—Form Change" endorsement explicitly
replaces Item B on the "Protective Safeguards" endorsement.  So modified, Item B
on the "Protective Safeguards" endorsement adds a provision to the "Exclusions"
section of the "Causes of Loss—Special Form" page in the Policy.  The added
provision states "We will not pay for loss or damage caused by or resulting from
applicable causes of loss specified below, if prior to the loss, you . . . [f]ailed to
maintain any protection safeguard listed in the schedule above, and over which you

449774.1

had control, in complete working order." Below, the form specifies "Water Damage" and provides that "Water Damage applies to Warrant Heat maintained at 55 degrees."

11.    The Commercial Property Coverage Part Declarations indicate that 455 purchased the "Optional Coverage" for "Building" "Replacement Cost."

12.    A remediation contractor, Signal Restoration Services ("Signal"), was hired by 455 to perform emergency mitigation work, which it commenced on January 13, 2015, extracting water from the Insured Premises.

13.    Landmark retained independent adjuster Engle Martin & Associates ("Engle Martin") to investigate the Loss.

14.    Engle Martin assigned Jeffrey Nonhof primary responsibility for investigating the Loss on behalf of Landmark.

15.    On May 13, 2015, Landmark denied coverage for 455's Claim, stating that 455 breached the Protective Safeguards endorsement and therefore coverage for the Claim was excluded.

**5.    <u>ISSUES OF FACT TO BE LITIGATED</u>**

**Plaintiff's Position:**

The following issues of fact remain to be litigated:

(1) Can Landmark meet its burden to prove the fifth-floor pipe froze and broke, and that it did so because 455 failed to maintain heat at 55 degrees prior to

the Loss, so that the Protective Safeguards exclusion applies, despite the strong

evidence that the heat was on in the Insured Premises at the time the Loss was

discovered and the lack of evidence of freezing?

(2) If the Protective Safeguards endorsement exclusion does not apply to

455's Claim:

(a) What is the replacement cost value of the damage to the Insured

Premises to which 455 is entitled?

(b) What is the amount of mitigation costs to which 455 is entitled?

(c) What is the amount of penalty interest to which 455 is entitled?

**Defendant's Position:**

The following issues of fact remain to be litigated:

(1)    Did the loss and damage to 455's vacant building fall within the

coverage of the Landmark policy of insurance issued at the time of the claimed

loss, No. LHD388678, with an effective Policy Period of 7/8/2014 to 7/8/2015 (the

"Landmark Policy")?

(2)    Did Plaintiff meet its initial burden to prove that it complied with the

Policy's condition of coverage imposed by the Protective Safeguards

Endorsements which required Plaintiff to maintain heat at 55 degrees?

(3)    Did Plaintiff fail to maintain the building's heat at 55 degrees as

required by the Protective Safeguard Endorsements?

449774.1

(4)     To the extent coverage is found to exist – which Landmark disputes – has Plaintiff proven the scope and value of the claimed damaged resulting from the water loss?

(5)     Are any of Plaintiff's claimed damages excluded by the Policy's Asbestos exclusion?

(6)     Are any of Plaintiff's claimed damages sublimited by the Policy's provision addressing mold?

(7)     Did Plaintiff submit a satisfactory proof of loss? If so, when was a satisfactory proof of loss submitted such that the provisions of Mich. Comp. Laws § 500.2006 are triggered?

## 6.     <u>ISSUES OF LAW TO BE LITIGATED</u>

**Plaintiff's Position:**

There are no issues of law to be litigated, although by stating that no issues of law remain to be litigated at trial, the Parties do not waive any rights they have regarding their respective motions for summary judgment to the extent those motions were denied by the Court.

**Defendant's Position:**

Plaintiff and Defendant disagree on which party has the burden of proof with regard to: (1) initial proof of the existence of loss or damage falling within an insurance policy's coverage (2) establishing compliance with the Policy's

22

condition precedent to maintain the building's heat at 55 degrees; (3) that Defendant need only prove that Plaintiff failed to maintain heat at 55 degrees for the Protective Safeguard Endorsements' exclusion to relative to water loss and damage to be applicable; and, (4) the burden of proof as to the exceptions to exclusions.

### 7.   **EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL**

When the Parties were operating under the pre-trial schedule set by Judge Goldsmith before he recused himself from the case, the Parties submitted motions *in limine* and motions to exclude experts well before the April 23, 2018 date for motions *in limine* set in the Court's Amended Scheduling Order.  The Court decided those motions, denying all of them without prejudice on August 30, 2017. The Parties believe those issues may arise at trial and reserve their rights to renew those motions should circumstances warrant pursuant to the Court's directives at the August 30, 2017 hearing.  The Parties refer the Court to those motions, Dkt. Nos. 61, 63, 64, 113, 114, 115, 116, 117, 118, 119, 121, 122, and 123 for a concise description of the facts and argument relating to those motions.  Finally, 455 has filed three new motions *in limine* asking this Court to (a) preclude Peter McAlpine from testifying at trial entirely or, in the alternative, precluding his improper lay opinion testimony related to causation; (b) preclude undisclosed witness Ray Rivard from testifying at trial; and (c) preclude undisclosed witness Paul Runde

449774.1

from testifying at trial.  Landmark has filed three new motions *in limine,* asking this Court to:  a) preclude Plaintiff from presenting evidence related to its dismissed consequential damages and/or attempting to circumvent the Court's August 9, 2017 Opinion and Order (R.Doc. 159); b) preclude Plaintiff from presenting its interpretation of insurance policy terms and conditions to a lay jury, when this is an issue of law reserved to the Court, as well as precluding the use of insurance reserves information; and c) preclude Plaintiff from making reference to, or introducing into evidence, hearsay draft expert reports.

### 8.    WITNESSES

#### A. Plaintiff

455 has proposed that the parties disclose by April 30 those witnesses they know are unavailable and that they will seek to call by designation rather than live, while reserving rights to designate additional witnesses who later become unavailable due to unforeseen circumstances or for good cause.  455 has further proposed that witness disclosure will in no event be completed later than 9:00 am the day before the witness testifies, including the order that the witnesses will testify, and whether the testimony will be live or by deposition, along with proposed deposition designations if applicable.  Counter-designations and objections will be due by 12:00 pm, and the parties will meet and confer on any objections by 3:00 pm.  The original designating party will prepare a video of the

449774.1

proposed testimony, omitting all objections by counsel, and provide a copy to opposing counsel for review by 5:00 pm prior to being played at court. The original designating party will be responsible for providing the Court with a clip report and copy of the video clips from both parties at 8:00 am the day of trial.

455 objects to Landmark's deposition designations of witnesses for whom there is no indication of unavailability as required by Fed. R. Civ. P. 32. In the event that any of these witnesses are presented by deposition, either due to unavailability or for any other reason, 455 reserves the right to object to Landmark's specific designations and to propose counter-designations.

455's proposal is not, contrary to Landmark's statement, "inconsistent with the deposition designation instructions of the Amended Scheduling Order," as shown by Landmark's own conduct under the same order. 455 has not made any effort, apparent or otherwise, to avoid making deposition designations by today's deadline. 455 identified one witness it may call, Mark Schwartz, who is potentially not available as that term is defined under Rule 32, and made designations for the testimony of his it may seek to introduce. Instead of counter-designating testimony for Mr. Schwartz, Landmark has reserved its rights to counter-designate pending a ruling from the Court as to whether his deposition testimony will be admitted. Rather than attempting trial by ambush, 455 seeks a trial with live witness testimony. Landmark is seeking trial by ambush as it has

25

refused to disclose in advance which witnesses it intends to call live and also refuses 455's reasonable request for advance notice of the order of witnesses who will testify on any given day.

Landmark's request for permission to use the electronically recorded excerpts at trial should be denied – Landmark's proposal to introduce video clips for witnesses who will appear live is at best redundant, and it only disclosed its "rigorously edited" video clips to counsel for 455 *the day this proposed order is to be submitted*, providing 455 no time to review.

    i.  Will Call

1. Michael Brugger, c/o Charles Pike, Smith Haughey Rice & Roegge, 100 Monroe Center NW, Grand Rapids, Michigan 49502, Tel:  (616) 458-5456

2. David Eby, Ph.D., P.E. (expert), Design Research Engineering, 46475 DeSoto Court, Novi, Michigan 48377, Tel: (248) 668-5519

3. Philippe Katz, c/o Braun Management, 160 Broadway, New York, New York 10038, Tel: (212) 349-2875

4. Matthew Pollard, c/o Charles Pike, Smith Haughey Rice & Roegge, 100 Monroe Center NW, Grand Rapids, Michigan 49502, Tel:  (616) 458-5456

5. Mark Stonier , (expert), Building and Estimating Services, Inc., PO Box 1145, Birmingham, Michigan 48012, Tel: (248) 343-3460

    ii.  May Call

1. Don Archer, c/o David E. Plunkett, Williams Williams Rattner & Plunkett, P.C., 380 North Old Woodward

Avenue, Suite 300, Birmingham, Michigan 48009, Tel: (248) 642-0333

2. Elizabeth Buc, Fire and Materials Research Lab, LLC, 33025 Industrial Road, Livonia, Michigan 48150, Tel: (586) 496-6736

3. Mark Davis, c/o Elizabeth Sokol, Kostopolous Rodriguez, PLLC, 550 West Merrill Street, Suite 100, Birmingham, Michigan 48009, Tel: (248) 268-7800

4. D. Michael Dowdall, Thornton Tomasetti, 2323 Grand Blvd., Suite 900, Kansas City, Missouri 64108, Tel: (816) 221-7771

5. Wayne Elliott, Interstate/Statewide Disaster Restoration, 2310 Telegraph Road, Southfield, Michigan 48033, Tel: (248) 752-1062

6. Brian Galbraith, c/o Elizabeth Sokol, Kostopolous Rodriguez, PLLC, 550 West Merrill Street, Suite 100, Birmingham, Michigan 48009, Tel: (248) 268-7800

7. Ethan Gross, Globe Midwest Adjusters International, 25800 Northwestern Highway, Suite 885, Southfield, Michigan 48075, Tel: (248) 352-2100

8. Adriel Jackson, c/o Charles Pike, Smith Haughey Rice & Roegge, 100 Monroe Center NW, Grand Rapids, Michigan 49502, Tel:  (616) 458-5456

9. Michael Koski, Landmark American Insurance Company, 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326, Tel: (404) 266-3033

10. David McConnell, D.J. McConnell Co. HVAC Services, 70200 Henry Ross Dr., Romeo, Michigan 48065, Tel: (586) 752-5759

11. Bryan Newell, c/o Elizabeth Sokol, Kostopolous Rodriguez, PLLC, 550 West Merrill Street, Suite 100, Birmingham, Michigan 48009, Tel: (248) 268-7800

27

2:16-cv-10034-RHC-SDD    Doc # 182    Filed 05/07/18    Pg 28 of 38    Pg ID 12597

12. Jeffrey Nonhof, Engle Martin & Associates, 7100 Northland Circle, Suite 108, Brooklyn Park, Minnesota 55428, Tel: (763) 230-7302

13. Mark Schwartz, Landmark American Insurance Company, 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326, Tel: (404) 266-3033

14. Isaac Sheppard, Sheppard Structural Consulting, P.C., 1049 John R Road, Rochester Hills, Michigan 48307, Tel: (248) 608-3445

15. Charles Sorrell, Xpert Consulting Services, LLC, 336 W. First Street, Suite 113, Flint, Michigan 48502, Tel: (844) 973-7848

16. Elie Torgow, c/o Charles Pike, Smith Haughey Rice & Roegge, 100 Monroe Center NW, Grand Rapids, Michigan 49502, Tel:  (616) 458-5456

17. Jim Wagner, c/o David E. Plunkett, Williams Williams Rattner & Plunkett, P.C., 380 North Old Woodward Avenue, Suite 300, Birmingham, Michigan 48009, Tel: (248) 642-0333

18. Robert West, R.A. West Associates, 2865 South Eagle Road, #359, Newtown, Pennsylvania 18940, Tel: (212) 860-5026

19. Caleb Williams, c/o Elizabeth Sokol, Kostopolous Rodriguez, PLLC, 550 West Merrill Street, Suite 100, Birmingham, Michigan 48009, Tel: (248) 268-7800

20. Terence Edmondson, Exclusive Reality, 400 Monroe Street, Suite 490, Detroit, Michigan 48226, Tel: (313) 963-7653

## B. Defendant

Defendant objects to Plaintiff's proposal regarding witnesses above as

inconsistent with the deposition designation instructions of the Amended

449774.1

Scheduling Order, R.Doc. 168 Sections 5 and 6.  The parties do not have the authority to modify this Court's Scheduling Order.  Further, the proposal is an apparent effort to avoid making deposition designations by today's deadline.  At the parties' meet and confer on exhibits, Plaintiff indicated that it would seek additional time to do so based upon who it determined was unavailable at the time of trial.  The foregoing proposal does not cure any untimely disclosure of deposition designations and video which, if permitted, would be tantamount to trial by ambush.

Defendant further requests permission of this court to use Defendant's electronically recorded deposition excerpts at a trial of these matters, as these recordings have been rigorously edited per (R.Doc. 168, Section 7), provided to plaintiff, and are each a limited series of question and answers with short duration. Although Plaintiff complains that it did not receive video excerpts before today, it has been in possession of Landmark's deposition designations since before the March 28, 2018 meet and confer, and has had the full videos in its possession since 2016.

       i.     Will Call

           1.  Michael Koski

           2.  Elizabeth Buc

           3.  D. Michael Dowdall

           4.  Jeffrey Nonhof

449774.1

      5.  Wayne Elliott

      6.  Robert West

      7.  Isaac Sheppard

ii.    May Call

      1.  Paul Runde

      2.  Jim Wagner

      3.  David McConnell

      4.  Ian McConnell

      5.  Don Archer

      6.  Keith Arnold

      7.  Pete McAlpine

      8.  Ray Rivard

      9.  Brian Galbraith

      10.Anthony Patera

      11.Caleb Williams

      12.Michael Reese

      13.Adriel Jackson

      14.Matthew Pollard

      15.Michael Brugger

      16.Ethan Gross

      17.Philippe Katz

      18.Dennis McQuade

      19.Tyler Lenling and/or other representatives of TEK

449774.1

Environmental & Consulting Services

20. Frederick J. Abdou and/or other representatives of ABF Environmental

## 9.   **EXHIBITS**

In accordance with Sections 5 and 6 of the Amended Scheduling Order, the Parties met and conferred regarding exhibits on March 28, 2018.  The parties will file a proposed stipulated exhibit list along with lists of proposed exhibits, the admissibility of which has been objected to by the opposing party, along with the reason (supplied by the opposing party) for the objection.

## 10.   **DAMAGES**

**Plaintiff's Position:**

455 seeks $3,397,723.95 as the replacement cost of the damage to the Insured Premises as a result of the Loss, based on the estimate of its expert, Mark Stonier.[12]  455 further seeks $1,286,592.31 in mitigation costs for which it has been invoiced by Signal as of November 30, 2017 (this number does not include asbestos abatement costs invoiced by Signal that are not covered under the Policy, but does include continuing interest).  Thus, 455 seeks compensatory damages of

---

[12] Landmark claims that "Plaintiff would have to actually repair or replace its property as a precondition to recovery of replacement cost value."  This is flatly contradicted by the Court's ruling on Landmark's motion for partial summary judgment that "Defendant's alleged bad faith would be relevant to whether Plaintiff *should receive the replacement cost immediately* or only after repairing or replacing the building."  Dkt. No. 159, at 12 (emphasis added).

31

449774.1

at least $4,684,316.26 in combined replacement and mitigation costs. 455 further

seeks pre-judgment interest on this amount as well as attorneys' fees and costs to

the extent recoverable by law.

Landmark claims damages only need to be resolved at trial because 455 has

refused to work out the issues. This is a remarkably selective presentation of the

facts of this case. In the immediate aftermath of the Loss, well prior to litigation,

455 and its representatives attempted to resolve differences in valuation with

Landmark, but Landmark and its representatives refused, presumably to maintain a

valuation gulf that it believed could create settlement leverage. By May 28, 2015,

when 455's adjuster reached out to Landmark's estimator to continue to work

together on the damages estimate, he was told curtly that Landmark's estimator

"has final invoiced this claim, and closed our file. I don't mean to sound petty, but

I can't put work into something I can't invoice." 455's damages estimate

developed with its expert is well supported. Landmark's estimate, however, has

continuously shifted throughout this litigation, even in the period for expert

discovery. 455's position is that there is a good faith dispute on damages that

needs to be resolved by the jury.

455 further seeks penalty interest on the compensatory damage award

pursuant to Michigan Compiled Laws § 500.2006 at a rate of 12% for the 38-

month period running from 60 days after 455 gave Landmark notice of the Loss to

449774.1

the trial date.[13]  Thus, as of the trial date, 455 is entitled to $1,781,913.91 in

penalty interest.[14]

**Defendant's Position:**

In the absence of a coverage dispute, and accounting for the non-damaged

and excluded items included in Plaintiff's claim (asbestos, mold, etc.), Landmark's

measure of the loss would be $2,988,464.08, consisting of $2,415,393.91

(replacement cost value) and $573,070.17 for the value of Signal's

work.  Landmark disputes that a satisfactory proof of loss has been provided by

Plaintiff at any time prior to trial, thus the interest 455 seeks in its damages model

pursuant to Mich. Comp. Laws § 500.2006 is not recoverable.

---

[13] Landmark states penalty interest is not recoverable because 455 has not provided "a satisfactory proof of loss."  It is undisputed that 455 gave timely notice to Landmark of the Loss, that Landmark began adjusting 455's claim, and that Landmark has never requested a proof of loss as required by its own Policy. Indeed, the Policy provides that Landmark is to provide 455 with the forms for proof of loss; it never did so, thus it is difficult to imagine how it can now complain that 455 has not provided "satisfactory" proof of loss.  Under these circumstances, penalty interest is warranted and runs from 60 days after 455 gave notice of the Loss.  *See Mathis*, 2008 WL 919934, at *4.

[14] This number is calculated by taking 12% of the total of the replacement and recoverable mitigation costs ($4,684,316.26), and multiplying that total by the 3.17 years (38 months) that have elapsed from 60 days after Landmark was notified of the Loss.

Further, as noted above, Plaintiff would have to actually repair or replace its property as a precondition to recovery of replacement cost value.[15]  455 has not repaired or replaced any of the allegedly damaged property as of this date.

Landmark has repeatedly suggested to Plaintiff and this Court that the respective adjusters for Plaintiff and Defendant should meet to work out the approximate $982,330.04 difference between the two parties' damages determinations, to reduce the time needed to try this matter and simplify the issues presented to the Jury.  Plaintiff has declined to do so.

## 11.  <u>TRIAL</u>

### A. Jury or non-jury.

Plaintiff requested trial by jury in its Complaint.

### B. Estimated length of trial.

#### Plaintiff's Position:

Plaintiff estimates that the trial will take seven days.  Landmark states that

---

[15] Landmark's Policy expressly provides that Plaintiff must actually repair or replace the damaged property in order to recover replacement cost proceeds.  This is consistent with MCL 500.2826 and the case law. See e.g., Cortez v. Fire Ins. Exchange, 493 N.W.2d 505, 196 Mich. App. 666 (1992); Smith v. Michigan Basic Property Ins. Ass'n, 441 Mich. 181, 189 (1992).  Landmark is cognizant of the Court's Opinion and Order of August 9, 2017 (R.Doc. 159), however, in the event that the Jury finds coverage, but does not find that Landmark was responsible for disabling Plaintiff from undertaking the repair or replacement – e.g., based upon 455's lack of any repair attempt whatsoever – then Plaintiff must effectuate repair or replacement in order to receive Replacement Cost value.

455 proposes to introduce approximately 300 exhibits and examine 24 witnesses in its case in chief. The vast majority of these exhibits and witnesses are listed as "may use" and "may call" to protect 455's rights to respond to arguments that may be made by Landmark. This is a simple, straightforward case that should proceed quickly with only the most relevant witnesses and documents and can easily be completed within ten days. 455 requests that trial not take place on May 21 and 22 as its client representative will be unable to attend those days due to the Jewish holiday of Shevuoth.

**Defendant's Position:**

Plaintiff has proposed to introduce approximately 400 exhibits and examine 24 witnesses in its case in chief. Given the number of witnesses, the volume of evidence sought to be introduced and, the fact that the multiple motions in limine (previously denied) will be re-visited during the pendency of the trial, Defendant's position is that three weeks is a more realistic period of time in which to conduct and conclude the trial of these proceedings.

## 12.   SETTLEMENT

The Parties have conferred and considered the possibility of settlement. Extensive settlement discussions have taken place, including at formal mediations conducted by two separate mediators. The most recent place and date of in-person settlement negotiations was November 9, 2017, at the JAMS office at 150 W

35

Jefferson, Suite 850, Detroit, Michigan 48226, with Clarence Pozza, Jr., Esq.,

serving as mediator.  The Parties have not been able to reach a settlement.  Both

Parties represent that they are ready, willing, and able to take part in good faith

settlement negotiations.  Additionally, both Parties will be attending the Final

Pretrial and Settlement Conference scheduled in the Amended Scheduling Order

for April 30, 2018 at 2:00 p.m. in Port Huron.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  May 7, 2018


I hereby certify that a copy of the foregoing document was mailed to counsel of record
and/or pro se parties on this date, May 7, 2018, by electronic and/or ordinary mail.


 S/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

449774.1

Dated:        New York, New York
              April 23, 2018


MCKOOL SMITH, P.C.                    GREGORY & MEYER P.C.

By:  /s/ Burt M. Garson              By:  /s/ Courtney E. Murphy
     Burt M. Garson                       Courtney E. Murphy
     (bgarson@mckoolsmith.com)            (cmurphy@clausen.com)
     Alexander M. Sugzda                  Jacob R. Zissu (jzissu@clausen.com)
     (asugzda@mckoolsmith.com)            CLAUSEN MILLER, P.C.

One Bryant Park, 47th Floor          28 Liberty Street, 39th Floor
New York, New York 10036             New York, New York 10005
Tel: (212) 402-9400                  Tel: (212) 805-3908

James D. Wilson                      Michele A. Chapnick
(jwilson@wyclaw.com)                 (mchapnick@gregorylaw.com)
WILSON YOUNG COSTELLO PLC            340 East Big Beaver Road
Two Towne Square, Suite 901          Suite 520
Southfield, Michigan 48076           Troy, Michigan 48083
Tel: (313) 983-1234                  Tel: (248) 689-3920

*Attorneys for Plaintiff 455 Companies*    *Attorneys for Defendant Landmark*
*LLC*                                      *American Insurance Company*


## LOCAL RULE CERTIFICATION

I, Burt M. Garson, certify that this document complies with Local Rule

5.1(a), including:  double-spaced (except for quoted materials and footnotes); at

least one-inch margins on the top, sides, and bottom; consecutive page numbering;

and type size of all text and footnotes that is no smaller than 10-1/2 characters per

449774.1

inch (non-proportional fonts) or 14 point (for proportional fonts).  I also certify that

it is the appropriate length.  Local Rule 7.1(d)(3).

By: /s/ Burt M. Garson
     Burt M. Garson
     McKool Smith, P.C.
     One Bryant Park, 47th Floor
     New York, New York 10036

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2018, I caused the foregoing paper to be

electronically filed with the Clerk of the Court using the ECF system which will

send notification of such filing to all counsel of record.

By:  /s/ Burt M. Garson
     Burt M. Garson
     McKool Smith, P.C.
     One Bryant Park, 47th Floor
     New York, New York 10036

449774.1