# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

455 COMPANIES, LLC,

    Plaintiff,

v.                                                           Case No. 16-10034

LANDMARK AMERICAN INS. CO.,

    Defendant.

                                               /

## ORDER ON PENDING MOTIONS IN LIMINE

Motions in limine serve—at least ostensibly—to limit the issues for trial and to eliminate unnecessary interruptions. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). But any streamlining that motions in limine may have achieved in this case is the stuff of imagination. Counsel have, in fact, filed over nineteen motions in limine in this matter, resulting in extensive briefing and significant expense. Presently before the court are six still-pending motions in limine (Dkt. ##169, 170, 171, 172, 173, 177) and one motion for leave to file a motion in limine (Dkt. #190). For the following reasons, each will be denied, save Defendant's motion to exclude draft expert reports, which is granted in part and denied in part.

### A. Motions to Prevent Witnesses From Testifying

Plaintiff moves to preclude three witnesses from testifying: Peter McAlpine (Dkt. #169), Ray Rivard (Dkt. #170), and Paul Runde (Dkt. #171). Defendant also asks for leave to file a motion to preclude Terence Edmondson from testifying. (Dkt. #190).

Because each of these witnesses may properly be called to the stand, the court will deny the motions.

Though the parties set out their varied reasons for precluding the identified witnesses, each motion shares a common theme: the witness was not timely disclosed as either a lay witness or an expert. Federal Rule of Civil Procedure 37(c)(1) provides that, where a party fails to properly identify a witness, "the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." The court looks to five factors in assessing whether the nondisclosure was "substantially justified" or "harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). Whether to impose a sanction—including exclusion of the testimony or evidence—for failure to timely disclose is within the discretion of the district court. *Jordan v. Cleveland*, 464 F.3d 584, 600 (6th Cir. 2006).

### *i. Plaintiff's Motion to Preclude Peter McAlpine from Testifying (Dkt. #169)*

Plaintiff moves to exclude Peter McAlpine, a consultant for a company that conducted heating work in the building after the loss. It claims that McAlpine was not disclosed as an expert witness, and—as a person with technical and specialized knowledge—any evidence that McAlpine could offer would be improper opinion testimony.

Not so. This motion, like those the court has already denied, is based on a lack of foundation that has not yet occurred. Defendant avers that it intends to offer McAlpine, not as an expert on the cause of the loss, but as a witness who will attest to the observations he made while working on the building. Defendant, in other words, says it intends to offer McAlpine as a fact witness, one that it properly disclosed. The court sees no basis to preclude him from taking the stand.

Plaintiff also argues that McAlpine should be excluded because of the danger of unfair prejudice. It claims that McAlpine could provide information only as to the observations he made of the building nearly a year after the loss occurred. This evidence, Plaintiff says, would be misleading and confusing, carrying little probative weight having occurred so long after the loss. The court evidently has greater confidence than counsel in his ability to argue to the jury the probative weight it should attach to the evidence presented. These matters are ripe for cross examination and closing argument, not a motion in limine.

### ii. Plaintiff's Motion to Preclude Ray Rivard from Testifying (Dkt. #170)

Plaintiff moves to exclude Ray Rivard—a technician who worked on the building—from testifying because, it claims, Rivard was not timely disclosed as a potential witness. On this point, as Defendant describes it, Plaintiff attempts to eat its cake and have it too.

In the last round of motions in limine, Plaintiff attempted to exclude a letter from the contracting company that worked on the building heating system some ten months after the loss. (*See* Dkt. #113.) The court denied the motion, specifically noting that foundation could be laid by a witness with knowledge of the contents of the letter. (*See*

3

Dkt. #166 Pg. ID 11657–58.) According to Defendant, it added this witness to its "may call" list for that reason: to provide the proper foundation in the event that Plaintiff objects to the document. Defendant's late disclosure, then, is substantially justified. Plaintiff does not claim that it is unaware of what Rivard will say on the stand—indeed, it claims that Rivard's testimony will very likely be irrelevant, an assessment it could make in good faith only if it had some idea of what the testimony would be. (Dkt. #170 Pg. ID 11782.) And Defendant apparently intends to offer Rivard only in the event that Plaintiff continues to raise its objection to the letter it previously sought to exclude.

Plaintiff cannot have it both ways. If Rivard can properly lay the foundation that Plaintiff claims is lacking, that evidence will properly be presented to the jury, subject to any cross examination that Plaintiff might conduct.

### *iii. Plaintiff's Motion to Preclude Paul Runde from Testifying (Dkt. #171)*

Finally, Plaintiff moves to exclude Paul Runde, an individual who performed freezing demonstrations for one of Defendant's timely-disclosed experts. As above, the court will deny the motion because Defendant says that it will call Runde only in the event that Plaintiff challenges the foundation for these demonstrations (as it has indicated it might). Plaintiff was aware of Runde and his role in the expert opinion far in advance of trial (*see* Dkt. #180 Pg. ID 12495–96). Contrary to Plaintiff's repeated assertion that (as a person with technical expertise) Runde could offer only opinion evidence, Defendant avers that Runde would testify only to the steps that he took to perform the demonstrations. The court finds that Runde's late disclosure is both harmless and substantially justified, and his wholesale exclusion is not warranted.

### *iv. Defendant's Motion for Leave to File a Motion in Limine Precluding Terence Edmondson (Dkt. #190)*

Defendant moves for leave to file a motion in limine to preclude Terence Edmondson from testifying at trial (Dkt. #190) and attaches its proposed motion (Dkt. #190-1).[1] Defendant argues that—despite its repeated requests for information as to who discovered the loss in this case—Plaintiff disclosed for the first time during the final pretrial conference that Edmondson discovered the loss and Plaintiff would be calling him to the stand to testify. Concerned about its apparent inability to get further discovery from Edmondson, Defendant decries this revelation as trial by ambush.

The problem with Defendant's argument is that any "ambush" is at least partially of its own making. On one of its earliest witness lists, Defendant *itself* listed Edmondson (who is, evidently, a real estate broker) as a witness it might call to testify. (Dkt. #50 Pg. ID 930.) Though Defendant avers that it intended to call Edmondson only as to the issue of Plaintiff's then-pending request for consequential damages, that fact alone does not excuse Defendant's apparent decision not to interview or otherwise speak to a witness it said it intended to call to the stand. Defendant, in other words, had ample opportunity to find out what Edmondson knew, but seems to have passed up on that opportunity.

This conclusion is bolstered by the fact that Defendant was at least on notice that Edmondson might be a person with knowledge as to who discovered the loss (even if Defendant was not on notice that Edmondson was himself the discoverer). Just two

---

[1] For some reason that is unclear to the court, Defendant has formatted this motion as a letter, ignoring the general formatting rules for motions in the Eastern District. *See* E.D. Mich. L.R. 5.1. Also inexplicably, Plaintiff's response is formatted in the same way.

weeks before it designated Edmondson as a potential witness, Defendant deposed another witness—Matthew Pollard—who testified that the person who discovered the loss was a real estate broker. (*See* Dkt. #190-1 Pg. ID 12962–63.) That Defendant did not connect the dots—or otherwise interview a witness it, at one point, intended to call—does not warrant exclusion of Edmondson's testimony.

Nor is there any evidence that Plaintiff was aware of Edmondson's knowledge but failed to disclose it. Indeed, Plaintiff says that there is a good explanation for why it never identified Edmondson as the person who discovered the loss: it, like Defendant, did not know what Edmondson knew.[2] And there is no evidence to suggest that Plaintiff has been, for some two years, holding on to this information without revelaing it.

The court notes, moreover, that nothing is now preventing Defendant from talking to Edmondson in advance of his testimony. Defendant complains that even a deposition this late in the game would not cure the potential prejudice of allowing Edmondson to testify. But it does not explain why. Defendant has just as much ability now as it did in September 2016—when it first identified Edmondson as a witness it may call—to at least interview Edmondson and find out what he knows.

The remaining two elements of the court's "substantially justified" or "harmless" analysis—potential disruption to the trial and the importance of the evidence—similarly

---

[2] Defendant makes much of Plaintiff's delay in conveying the revelation that Edmondson discovered the loss. Though Plaintiff learned of Edmondson's identity as the discoverer some time before April 18, 2018 (when it updated its "may call" witness list), Plaintiff did not inform Defendant of the substance of his potential testimony until April 30, 2018. The court does not condone the lag in disclosure time; counsel can and should be more forthcoming. But this delay alone—amounting to around twelve days—does not itself justify exclusion of this witness, especially when there is no evidence to suggest that Plaintiff was aware of Edmondson's significance any earlier than some few days before April 18.

weigh in favor of Edmondson being allowed to testify. Other than Defendant's concern of unfair surprise, it has not explained how this testimony would disrupt the proceedings. And Edmondson, as the discoverer of the loss, likely has important evidence to offer for the jury's evaluation.

Having duly considered Defendant's arguments to exclude Edmondson as a witness, the court will deny leave to file the motion in limine as futile.

### B. Evidentiary Objections

Defendant objects to various categories of evidence it believes Plaintiff will offer at trial. Because these objections—with one exception—are most appropriately raised at trial, the court will largely overrule them and deny the motions in limine.

*i. Landmark's Motion to Preclude Evidence of Consequential Damages (Dkt. #172)*

Defendant moves to exclude any evidence related to Plaintiff's dismissed claim for consequential damages. The motion is denied as moot. Plaintiff avers to the court that it "is not seeking the consequential damages addressed [the court's prior] opinion." (Dkt. #184 Pg. ID 12664.) In the event Plaintiff strays from the contours of that order, the court trusts that Defendant will raise the appropriate objection at trial.

*ii. Landmark's Motion to Exclude Draft Expert Reports (Dkt. #172)*

Having disclosed a number of its experts' unsworn draft reports during discovery, Defendant moves to prevent them from being admitted at trial as inadmissible hearsay.

Plaintiff raises two responses. First, according to Plaintiff, the draft reports are qualify as non-hearsay statements of a party opponent under Federal Rules of Evidence 801(d)(2)(C) and (d)(2)(D). Those rules provide that statements, offered against an opposing party, are not hearsay where "made by a person whom the party authorized to

7

make a statement on the subject," or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Plaintiff claims that Defendant's experts, as persons "hired" by Defendant, are employees such that their statements qualify as party opponent non-hearsay.

The argument is easily disposed of. An expert witness's unsworn statements are hearsay. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480–81 (6th Cir. 2008). And Plaintiff has given the court no reason to conclude that any of Defendant's experts were acting as Defendant's agents or employees such that their statements should be deemed non-hearsay under 801(d)(2)(C) or (d)(2)(D)—especially when courts are reluctant to so find. *See Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 789 F. Supp. 2d 777, 785 (E.D. Mich. 2011) (Rosen, J.) ("[T]he courts are reluctant to view an expert as an 'agent' of the party who calls him as a witness, or as 'authorized by the party to make a statement concerning the subject' addressed in his expert testimony, such that out-of-court statements or information incorporated into the expert's testimony would be admissible . . . ." ). The draft reports are inadmissible hearsay and will not be admitted as stand-alone exhibits.

But Plaintiff argues in the alternative: the expert reports could, depending on the evidence presented, constitute a prior inconsistent statement that may be used for impeachment purposes. The court agrees. The court will not, therefore, order that the draft reports not be used under any circumstance. Defendant, perhaps recognizing this eventuality, has proposed that Plaintiff be required to request a sidebar before making any reference to the draft report in front of the jury. The court deems the suggestion a sensible one and will adopt it. If Plaintiff's counsel believes that an impeachment with

8

the draft report is warranted, he must request a sidebar and obtain court permission before mentioning the draft report in front of the jury.

### *iii. Landmark's Motion to Preclude Defendant from Using Argument, Testimony, or Evidence to Set Landmark's Burden of Proof Regarding Coverage and Landmark's Setting of Reserves (Dkt. #177)*

Finally, Defendant moves to preclude Plaintiff from using testimony or evidence to "set" the burden of proof in this case. The court will deny the motion as moot. The court has already issued its order resolving the burdens of proof in this matter. (Dkt. #193.) Any testimony or evidence that purports to establish what the burden of proof is—or ought to be—would be both irrelevant and improper. To the extent that Defendant, at trial, believes Plaintiff is offering evidence relevant only to the issue of the burden of proof, it may raise the appropriate objection.

Defendant also moves to exclude any evidence related to its setting of reserves as irrelevant and misleading to the jury. Plaintiff responds that the evidence it intends to offer—while in some cases touching on reserves—is intended only as evidence relating to the issue of each party's assessment of damages. Indeed, according to Plaintiff, it "will not assert that Landmark's setting of reserves is an admission of coverage for 455's claim." (Dkt. #186 Pg. ID 12713.) If the court deems that evidence presented at trial could cause confusion or mislead the jury on this issue, the court will issue the proper instruction. But a whole-cloth exclusion of evidence that touches on reserves is unwarranted, and the motion will be denied.

## C. Conclusion

Counsel have presented arguments and objections that are more properly raised in the courtroom. Many of these motions imagine situations that have not yet happened.

If and when some improper foundation is laid or some inadmissible evidence is offered or some inappropriate argument is set forth, the court trusts that counsel will raise the appropriate objection at trial. Accordingly,

IT IS ORDERED that Plaintiff's Motion in Limine to Preclude Peter McAlpine from Testifying at Trial (Dkt. #169) is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Preclude Ray Rivard from Testifying at Trial (Dkt. #170) is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Preclude Paul Runde from Testifying at Trial (Dkt. #171) is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude All Testimony, Evidence, and Argument Relating to Plaintiff's Dismissed Consequential Damages Claim (Dkt. #172) is DENIED as MOOT;

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Preclude Use or Reference to Draft Expert Reports at Trial (Dkt. #173) is GRANTED IN PART and DENIED IN PART. It is GRANTED in that the reports will not be admitted as a stand-alone exhibits, but DENIED to the extent that Plaintiff may properly use them for impeachment, subject to the side-bar requirement outlined above;

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude All Argument, Testimony, or Evidence to Set Landmark's Burden of Proof Regarding Coverage and Landmark's Setting of Reserves (Dkt. #177) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File a Motion in Limine to Preclude Plaintiff from Calling Terence Edmondson (Dkt. #190) is DENIED.

          s/Robert H. Cleland          /
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: June 28, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 28, 2018, by electronic and/or ordinary mail.

          s/Lisa Wagner          /
          Case Manager and Deputy Clerk
          (810) 292-6522

Z:\Cleland\KNP\Civil\16-10034.455COMPANIES.Motions.In.Limine.KNP.docx